718 F.Supp. 744 (1989)
SAFECO INSURANCE COMPANY OF AMERICA, Plaintiff,
v.
Kristine HAMM, Joseph L. Thomas, Michele R. Ritcher, Douglas Robinson, Shelly A. Jones, Todd Alan Shipp, Gary Hamm and Bill Powell and Patricia Powell, Individually and d/b/a K & B Quick Shop, Defendants.
No. 86-341 C(5).
United States District Court, E.D. Missouri, E.D.
August 30, 1989.
William F. James, Wuestling & James, St. Louis, Mo., for plaintiff.
Frank B. Green, St. Louis, Mo., for Bill and Patricia Powell.
Brian P. Seltzer, St. Louis, Mo., for Kristine and Gary Hamm.

MEMORANDUM
LIMBAUGH, District Judge.
By way of introduction, but otherwise unnecessary for the resolution of the issues in this case, the Court relays the following statement of facts. On November 1, 1985, Joseph L. Thomas purchased intoxicating beverages from K & B Quick Shop. Todd Alan Shipp thereafter consumed the intoxicating liquor that Thomas had purchased, and proceeded to operate an automobile in *745 an intoxicated state. Shipp was operating the automobile while Thomas, Kristine Hamm, Michele Richter, Douglas Robinson and Shelly Jones were passengers in the car. The car was involved in a one-car collision on Old Jamestown Road in St. Louis County.
Gary Hamm is the father of Kristine Hamm, a minor. Miss Hamm apparently was pregnant at the time of the accident. As a result of the collision, Kristine Hamm sustained personal injuries, including the death of her fetus. Gary Hamm contends, on behalf of his daughter, that the death of the fetus was a direct and proximate result of the illegal sale of alcohol to Joseph Thomas, a minor, with such alcohol being subsequently consumed by Todd Shipp, thereby causing the accident due to Shipp's intoxicated state.
Apparently, each of the parties in the car has indicated an intention to seek damages for personal injuries from Bill Powell and Patricia Powell, the owners of the K & B Quick Shop. Plaintiff Safeco Insurance Company contends that it did not provide coverage to Bill and Patricia Powell for any cause of action based upon an illegal sale of alcohol. Plaintiff brings this action seeking declaratory judgment as to its responsibilities due and owing defendants Bill and Patricia Powell under the insurance policy plaintiff issued to them.
This suit was submitted to the Court on the pleadings, deposition testimony, documents and the stipulation of the parties. The Court, being fully advised in the premises, hereby makes the following findgs of fact and conclusions of law, as required by Federal Rule of Civil Procedure 52.

I. Findings of Fact.

Plaintiff Safeco Insurance Company is a lawfully organized corporation organized under the laws of the State of Washington, with its principal place of business therein. Plaintiff was authorized to do business in the State of Missouri, and generally engaged in the insurance business.
Defendants Bill Powell and Patricia Powell are citizens of Missouri, and do business as K & B Quick Shop. Defendant Todd Alan Shipp, as well as defendants Kristine Hamm, Joseph Thomas, Michele Richter, Douglas Robinson and Shelly Jones, are also citizens of the State of Missouri.
Defendants Powell have operated K & B Quick Shop since April 1982. The Powells called Agents Insurance to obtain coverage on their store. They dealt with an agent named Richard Ruff, who was gainfully employed as an insurance broker engaged in soliciting clients to place insurance with various carriers.
When Mr. Ruff and the Powells discussed business coverage, Powell indicated that he wanted full coverage. He was interested in having Ruff place full coverage in the business at the best possible rate. After talking with the Powells, Ruff returned to the office to discuss the application with the owner of the agency, who assisted Ruff in filling out the application. After that, Ruff took the application to Safeco and discussed it with their underwriter. Ruff chose Safeco as the carrier because it offered additional options covering glass, signs, greater coverage for employee dishonesty and money loss off premises.
There was nothing in the application form that Ruff prepared which indicated that the Powells engaged in or sold liquor. Ruff had advised the underwriter that liquor was sold and provided the underwriter with information as to what the percentage was between liquor and gross sales. Mr. Ruff never requested coverage for any liquor exposure, however, claiming that he was under the impression that it was automatically included in the policy.
When Ruff received the policy, he reviewed only the coverage sheet to make sure the monetary limits requested were present. When the policy was delivered to Powell, the only items discussed were the monetary limits and the amount of the deductible. The Powells never looked at the policy and never reviewed it, never read it, nor asked any questions about it.
Under the policy issued by plaintiff to the Powells, the initial policy period running from November 1982 to November 1983, liquor liability was specifically excluded *746 from coverage under the policy. This was because at the time the policy was initially issued plaintiff did not write "liquor liability" in the State of Missouri.
The initial policy did contain a provision for optional "updating" which provided in essence that plaintiff herein may, by endorsement or by substitution of forms, offer to defendants Powell, for future policy periods, the same or similar coverage that plaintiff at that time might be offering to the public at large.
After the first year of coverage expired, policy renewals were automatically initiated by Safeco in that prior to expiration of a current policy period, Safeco prepared and sent the renewal on its own initiative and made automatic increases in the building and contents coverages based upon an automatic inflation factor without any specific request or instruction from the Powells. Safeco made two such automatic renewals of the policy for the periods November 1983 to 1984 and November 1984 to 1985. The Powells accepted the automatic renewals and paid any premium increases as billed, without questions or objection.
On May 16, 1983, while the Powells' first year of coverage was in effect, plaintiff did begin to offer in Missouri "liquor liability" coverage. The price charged for this endorsement was a fixed charge of $15.00. Safeco announced this to all of its "agents" in a "Safeplan News Letter" dated June 3, 1983. That news letter specifically indicated that if coverage was desired, to send plaintiff an endorsement request. No endorsement for the Powells was ever made, received or issued including liquor liability coverage. Mr. Ruff contends that he never saw the news letter.
Plaintiff's initial policy excluding liquor liability remained in the same form on November 1, 1985, the date of the accident, as it was on the date of its original issue in November 1982. Safeco unilaterally undertook to renew the Safeplan policy insuring the Powells for the two subsequent policy periods without offering to update its liability coverage to include its newly available liquor liability coverage. The Powells argue that plaintiff knew the Powells' business activity included the sale of packaged liquor goods, and consequently the omission of the liquor endorsement from the renewal policy was a mistake.

II. Conclusions of Law.

This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because of the diversity of citizenship and an amount in controversy exceeding $10,000. Thus, the substantive law of Missouri applies under the circumstances of this case.
Under Missouri law, construction of insurance contracts is governed by the same general rules as are applied to the construction of other written contracts. Driskill v. American Family Ins. Co., 698 F.Supp. 789, 792 (E.D.Mo.1988); Jordan v. Equitable Life Ins. Co., 486 S.W.2d 664, 666 (Mo.App.1972). The insurance policy is simply a contract involving matters of basic contract law. The insurance company's liability is determined by the terms of the contract of insurance as contained in the policy. Levin v. State Farm Mut. Auto Ins. Co., 510 S.W.2d 455, 461 (Mo. banc 1974); Frisella v. Reserve Life Ins. Co. of Dallas, 583 S.W.2d 728, 733 (Mo.App.1979).
Whatever verbally transpired between the contracting parties is superseded and merged in a subsequent written policy issued by the insurer and accepted by the insured. Young v. Ray America, Inc., 673 S.W.2d 74, 79 (Mo.App.1984); Hartford Acc. & Indem. Co. v. Farmington Auction, Inc., 356 S.W.2d 512, 519 (Mo.App. 1962). An insured has a reasonable time to accept or reject the policy after it is delivered. If the insured keeps the policy for a reasonable length of time, he is deemed to have accepted it. Hartford, 356 S.W.2d at 519. When the insured keeps the contract, thereby accepting its terms, the insured is bound in law to have known the contents of the instrument whether he read it or not. U.S. v. Home Life Ins. Co., 508 F.Supp. 559, 564 (E.D.Mo.1980); Hartford, 356 S.W.2d at 519.
With automatic renewals of insurance policies, each renewal is a new contract. Renewal of the insurance policy constitutes a separate and distinct contract for the period of time covered by the renewal. *747 Bell v. O'Leary, 577 F.Supp. 1361, 1366 (E.D.Mo.1983), affirmed, 744 F.2d 1370 (8th Cir.1984). With each new policy, the same rules of contract interpretation discussed above apply.
The general rule that policies are to be construed as liberally as possible in favor of the insured, and all ambiguities are to be resolved against the insurer, does not apply unless there is an ambiguity in the language of the policy. Lindhorst v. Avemco Ins. Co., 636 F.Supp. 868, 871 (E.D.Mo. 1986).
In interpreting the policy that the insurer issued, and the insured accepted, where there is no ambiguity in the policy and the provisions contained therein are valid, the language of those provisions must be enforced in accordance with their plain meaning. Webb v. Voirol, 773 F.2d 208, 212 (8th Cir.1985). If the language of the insurance contract is clear and unambiguous, a court does not have the power to rewrite the contract for the parties and must construe the contract as written. Madison Block Pharmacy, Inc. v. U.S. Fidelity and Guaranty Co., 620 S.W.2d 343, 346 (Mo. banc 1981).
Not only must provisions be given their ordinary meaning and effect, but the words within the policy must also be given their ordinary meaning. The meaning of the terms is to be tested by the common understanding and ordinary speech of average men and women. MFA Mutual Ins. Co. v. Nye, 612 S.W.2d 2, 3 (Mo.App.1980). See also, Howard v. Russell Stover Candies, Inc., 649 F.2d 620, 623 (8th Cir.1981); Interco, Inc. v. Mission Ins. Co., 626 F.Supp. 888, 891 (E.D.Mo.1986), affirmed in part, rev'd in part, 808 F.2d 682, 685 (8th Cir. 1987).
With these principles of law in mind, the Court reaches the following conclusions. The Powell's insurance policy with Safeco is merely a contract governed in its interpretation by general contract principles. Driskill, 698 F.Supp. at 792. Safeco's liability is determined by the terms of the provisions of the policy. Frisella, 583 S.W.2d at 733.
The Powells desired the maximum coverage when they first discussed business coverage with Mr. Ruff. Their intent and Mr. Ruff's intent was maximum coverage at the best possible rate. When Mr. Ruff discussed the application with the underwriter at Safeco, he informed him of the sale of alcohol at defendants' quick shop. Safeco provided the Powells with the maximum coverage it had available at that time which excluded liquor liability, because Safeco did not write liquor liability in Missouri at that time. In fact, in paragraph eleven, Safeco specifically excluded liquor liability. Whatever verbally transpired between Safeco, Mr. Ruff and the Powells, was superseded and merged into the subsequent written policy issued by the insurer. Young, 673 S.W.2d at 79.
The Powells had a reasonable time to accept or reject the policy once Mr. Ruff delivered it to them. They kept the policy for a reasonable amount of time, and therefore accepted the terms of the policy, including the exclusion of liquor liability. Hartford, 356 S.W.2d at 519. Although the Powells did not read the policy at any time, when they accepted the contract by keeping it, they were bound to have known the contents of the policy. Thus, they were bound to have known that it excluded liquor liability. Home Life Ins., 508 F.Supp. at 564.
With each automatic renewal of the policy, a new contract was entered into between the Powells and Safeco. Although each renewal did not include the liquor liability coverage, when the Powells kept the policy they accepted the terms of the policy, even though they did not read the contents of each new policy at any time. Bell, 577 F.Supp. at 1366.
It is abundantly clear that the policy covering the Powells' business explicitly excluded liquor liability coverage. Paragraph eleven cannot be construed in any other way. There is no ambiguity in the policy. Thus, the language of the provisions must be enforced in accordance with their plain meaning. Webb, 773 F.2d at 212. The Court cannot construe the provisions to include coverage when it so clearly *748 excludes it. Madison, 620 S.W.2d at 346. Plaintiff expressly and unambiguously excluded liquor liability from defendants' policy, thus defendants are not protected from liability resulting from the illegal sale of alcohol.
Defendants contend that the provision in the policy for optional "updating", providing in essence that plaintiff may offer to the Powells in future policy periods the same or similar coverage that plaintiff at that time might be offering to the public at large, mandates that plaintiff had to update defendants' policy to include liquor liability coverage when plaintiff began offering it to the public in June 1983. The Court, however, must give words within the policy their ordinary meaning and effect, and not some contorted construction. MFA Mutual, 612 S.W.2d at 3. The word "may" within the optional updating provision clearly indicates that it was within the discretion of plaintiff to update defendants' policy at each renewal period. Plaintiff offered the update of liquor liability coverage through its agents. Defendants did not take advantage of the coverage. It was not plaintiff's obligation to automatically include it in the renewal policy. Moreover, according to the plain language of the policy, plaintiff never undertook that obligation to automatically include such provisions.
In conclusion, when defendants accepted the original insurance policy, defendants accepted the terms of that contract, which excluded liquor liability coverage. With each renewal policy that defendants accepted, they continued to agree to the terms of the policy, even though the terms did not include liquor liability coverage. Plaintiff did not have an obligation to update defendants' policy to include the liquor liability provision when it became available to the public at large. Accordingly, the Court declares that plaintiff's responsibilities and obligations due and owing defendants do not include coverage for liability arising out of the illegal sale of alcohol.
The Court finds for plaintiff and against defendants in this cause of action for declaratory judgment, and judgment shall be entered accordingly.

ORDER
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment is entered in favor of plaintiff Safeco Insurance Company and against defendants on the merits of plaintiff's declaratory judgment action.